Judge Robertson
delivered the opinion of the Court.
In 1825, the Legislature of Kentucky passed an act, (see Session acts of 1824, p. 195,) declaring that the appellant, Zachariah Conclude, should be a freeman, and should inherit the estate of Isaac Conclude, his father, who being a free man of color, had died without heirs. Zachariah Conclude shortly after the passage of the act, instituted his suit in Chancery, in the Jefferson Circuit Court, against Williamson, who administered on the estate of Isaac Conclude,, charging that the Administrator had in his possession assets amounting to at least $2500, and praying a decree against him for the amount which should be ascertained to be in his hands.
The Administrator admits in his answer, that he received of the estate of the intestate, $440 75cts.; but alleges, that before the date of the act of the Legislature, he had expended $400 of that fund in the purchase of a daughter of the intestate, whom he purchased to emancipate, according to the intention, and in fulfilment of the repeatedly expressed wishes of the decedant in his life time; and whom he did liberate by Deed, immediately after the purchase. For this sum he claims a credit; and as to the remaining $40 75 cts., he objects to the complainant’s right to it on the ground that, (as he alleges,) there are debts due to creditors of the estate, amounting to more than that sum, and that he is entitled to some compensation for his services as Administrator,
The evidence.
Bill .dismissed.
The question.
A slave not subject to es-cheat, but ve»ts in Administrators or executors as assets lor the benefit of cn ditors. Act of emancipation having passed, the subject of the act to be deemed free, until disfranchised. The liberty of a person of color thus situated, cannot be questioned collate rally, but only, by one asserting a ris>ht of property, or a lien.
It is proved, that Isaac Conclude, in bis life time, purchased the complainant; and had expressed a determination to purchase and emancipate his daughter, (afterwards emancipated by his administrator;! and at tiie time of his death, was making arrangements for 'the purchase. It is also proved, that he had deposited ,§200 with a friend to aid in the purchase, and directed him to make the purchase of his daughter, and set her free, if he himself should die before the desired object could be accomplished.
The circuit court dismissed the bill, and the complainant has appealed to this court.
The main question which must decide this case, is to us, novel and somewhat perplexing.
It is necessary to ascertain the effect of the legislative act. 1st. Has it any influence on the rignis of the parties ? 2nd. What is the extent of that- influence ?
Although the legislature was mistaken' in the opinion, that Zachuriah Conclude had escheated to the commonwealth, (see 2nd Digest, p. 1156;) yet we concede to the sovereign power a qualified light to enfranchise him. If lie vested in the administrator, it was chiefly for the benefit of creditors. Whether tb^re are any creditors, does not appear; nor if it did, could it have any effect in this case. The operation of the act of assembly on them, can only be decided when they shall assert their rights, and .resist its constitutional efficacy. If quoad them, he m-ght be liable to sale, nevertheless, he must be recognized as a freeman, until they shall be able to disfranchise him, unless there may be some other objection, Jhan the contingent rights of unknown creditors. ’ If they were known to exist, and to be able to assert successfully their lien upon him, still, until they shall have done so, his liberty cannot be questioned in any suit between him and one who asserts no claim to him. As he did not escheat-to the commonwealth, it might be urged that he would belong to the Administrator, if there are no creditors. It is not necessary to decide whether such interest m Use' administra *18 tor, is the meritorious and indefeasable right, which the constitution will protect, in opposition to the strong claims of humanity, and the positive will of the legislature; the administrator not only does not assert any claim to the plaintiff in error,but admits that he is a free man. Hence, for all the purposes of this controversy, we shall consider him entitled to the civil rights guaranteed to the white man. The administrator having acquiesced in the act of manumission, could not, if he would, urge any personal right of his own, in opposition to its validity.
Administrator having assented to the act of financipiuion. cannot urge any i-rsonal right to the party emancipated.
The interest which is deri-, ved by the plt’-f in error, under the act of assembly, to the estate of the intesta to. Difference between real and personal estates.
The act declaring slaves shall not es-cheat, provides that they shall go as e.nattels. Personal property of one dying intestate and without heir, is derelict.
The question then arises—what is the plaintiff in error entitled to, of the estate of Isaac Conclude? The act of the legislature was designed to give him all the estate left at Isaac’s death. If there had been real estate there could be no doubt of the.power of the legislature to grant it, to whomsoever its will might direct it: because the realty would belong to the state by escheat. Not so exactly, however, of the personalty. In England, the King as “Parens Patrice,” holds all the real estate of intestate subjects, who leave no heirs: and as "•Ultimus Tlwres:” he can also hold the personalty. But by long usage, now grown into law, some person appointed for that purpose, takes the goods and chattels. The commonwealth of Kentucky, in like manner, holding a similar relation of sovereignty, to the citizens, is entitled to the realty, except slaves, left by an intéstate citizen, without a legal heir. But we know no law of this stale, or of Virginia, before the separation, which provides for the escheat of persona] property. And the act which declares that slaves shall not escheat, provides that they shall “go as chattels and other estates personal:” Thus plearly negativing the idea, that personal property can escheat to the commonwealth. Must the personal property of Isaac Conclude, then be considered as derelict at his death? We know not to whom it belonged. The law would guard it, for the claims of creditors, and therefore an administrator is appointed. This property vests in him, in trust, for payment of debts. And the residuum left: after payment of debts, having been vested in him by law, can be retained in his *19 Custody, and appropriated to his use. Whether it would be in the power of the legislature to take it from him, without his consent, it is not necessary in this case to decide. We have already declined to decide, whether, the right of the administrator, to the slave Z tchariah, be such an one, as would enable him to resist the power of the legislature exerted in favor of human liberty. As he has waived all claim, and acquiesced in the act of emancipation, he cannot object that it was without his consent. And so it would be in relation to the other personalty of Isaac, if he did not resist the constructive operation of the legislative act, for reasons, entitled to the most gracious, and favorable consideration.
Influenced, by the most benevolent and commendable motives, the defendant appropriated $400 to the liberation of Isaac’s daughter, who, is the sister of the plaintiff. This appropriation had been made, before the act passed, under which Isaac claims. We are not willing to concede, that after he had thus disposed of this sum, the act of the legislature could have, or was meant to have, the effec.t of making him responsible for it, out of his own estate. It seems to us, if it be yielded, that the legislature could take from him as much of the assets, as were in his possession “nolens miens,” that it could not subject him to personal responsibility for that part appropriated, when there was no one in being, except himself, who had a right to it; nor could we ever believe, that the legislature would be willing, if it possessed the power, to take out of his private pocket, and put into Zachariah’s, the price of the liberty of Zachariah’s sister, purchased by disinterested benevolence, with the money scraped up in a life of toil and frugality, by her father, and by his reiterated and almost dying requests, consecrated to that humane object.
Zachariah had no right to this money when it was applied to the manumission of his sister. He then was a slave, and under the control of the administrator. But he is now, as he supposes, free, and is so, we have ’no doubt, with the qualification already indicated. Because his father had bought him, and died without heir, the legislature has declared him a free man. *20 and directed that he shall be entitled to his father*! est:a(-e: ' And he is now endeavoring to abuse ti.e liberty thus acquired, by denying the deit’s .right to a portion of the derelict funds of her father to the liberation of this same Zacbariah’s sistei. Such a claim cannot be sound in foro conscie,ntian—It cannot be favored !>_)' the chancellor. Zachariah should have been content with bis liberty, and rejoiced that a p .rtion of the same, “saving’s fund” which placed him in a condition to become free, had,in obedience to the injunctions of his provident father, rescued from slavery another of his children. Zachariah ought not to claim the $400, which redeemed his sister; much less ought be, if be could, to hold the administrator «responsible for it. The administrator might have sold him before the date of the act of“24.” If he had been influenced by cupidity, he would have done so, and retained the proceeds as well as the $400, and then Zachariah instead of being a plaintiff in this suii, might have been, and probably would have been, a slave. He does not present himself acceptably, in claiming; the $400 and we approve the decision of the chancellor, in which he forbore to aid an unjust, enterprize.
Administrator not responsible in •son °for estate of ¡riiest-ite dying with-when^noh estate has been approbeing des°ignated to receive; other-may remain unanpropriated.
Still however, if the claim-were clearly sanctioned. ^y the law, we could not withhold from him his rights, however much we might disapprove the feelings which, actuate him. But we are unable to establish for him an-v ^eSa^ right to the $400 exchanged for his sister’s liberty, independently of the consideration that the father had been saving money, for this generous purPosc’ ar>d had made a deposit with a friend,in trust to he so applied; and independently of all consideration of the right of the administrator, against all except creditors and heirs, to enjoy the money, the fact that ^ *lad been appropriated before the legislative act passed, should be decisive of the mere legal right. At the date of the act, the $400 had been disbursed and was not in the administrator’s hands when it was appropriated. Who was injured? Whose rights were invaded? There was no heir; no creditor complains; and tjle on]y 0th(>r individual who had any' semblance of right is the adminisirator himself.- In the abséj ce of an heir or creditor, who would have been entitled *21 to the money? Not Zachariah, certainly. Tf an individual find money, for which there is no owner, and give it to a school or church, or to a colonization, or emancipation, or hi hie society, can the legislature, after such appropriation, apply it to any other use or give it io any other person? We think not. And we fielven sure, that the finder and donor could not be made responsible for doing with it as he had a right to do. If then it were conceded, that the administrator had no better right to this money than the finder of derelict goods would have to them, it is clear to us, that he is not responsible by law, (we mean the paramount law) to the plaintiff. If the plaintiff be entitled to anything, it can only be the unappropriated balance in the hands of the administrator. This was all there was to give, when the legislature attempted to give. And we should have serious doubts whether this could have been given against the will of the administrator.
Denny for plaintiff; Richardson for defendant.
As however, he seems not to have objected, and has throughout, shown that he never asserted, nor never means to assert any personal right to the estate of the intestate; there should be no objection toZachariah’s right to the balance ot $40 75 cents, after paying the administrator for his services, and creditors, if there beany, their demands. As however, thcieis >o proof shewing that the administrator is entitled to extraordinary compensation, $40 would be more than the Usual allowance. The court therefore, ought to have decreed to the complainant, the balance, aftcr'making a reasonable allowance to the administrator, on a refunding bond being executed.
Decree therefore reversed and cause remanded, that a decree may be entered, consistent with this opinion.’